1
2
3
4
5
6
7
8    UNITED STATES DISTRICT COURT
9    SOUTHERN DISTRICT OF CALIFORNIA
10

11   DENNIS SHARP,                          CASE NO: 11-CV-675W (BLM)
12                         Plaintiff,        ORDER:
13
14                                           (1) GRANTING IN PART &
                                             DENYING IN-PART PLAINTIFF'S
15        v.                                 SUMMARY-JUDGMENT
                                             MOTION [DOC. 41];
16
17                                           (2) GRANTING IN PART &
                                             DENYING IN-PART
18   BALBOA ISLANDS LLC, et al.,             DEFENDANTS' SUMMARY-
                                             JUDGMENT MOTION [DOC. 44],
19                        Defendants.        AND
20
21                                           (3) REQUIRING FURTHER
                                             BRIEFING
22        Pending before the Court are the parties' cross-motions for summary judgment
23   under Federal Rule of Civil Procedure 56.  The Court decides the matters on the papers
24   and without oral argument.  See Civ. L. R. 7.1(d.1).  For the reasons discussed below,
25   the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's summary-judgment
26   motion [Doc. 41], **GRANTS IN PART** and **DENIES IN-PART** Defendants'
27   summary-judgment motion [Docs. 44], and **ORDERS** further briefing.
28

# I.   BACKGROUND

Plaintiff Dennis Sharp ("Sharp") is unable to independently stand or walk due to neurological injuries and, as a result, requires the use of a wheelchair for mobility. (*First Amended Compl.* ("FAC") [Doc. 10], ¶ 3.)  On December 7, 2010, Sharp and his wife, Joanne Sharp ("Joanne"), visited Islands-San Diego (the "Restaurant") and allegedly encountered various barriers that denied Sharp "full and equal access to and enjoyment" of the premises.  (*Id.*, ¶¶ 9–14.)

On April 4, 2011, Sharp filed suit against Defendants[1] alleging violations of the Americans with Disabilities Act ("ADA"), and California's Health and Safety Code, Unruh Civil Rights Act, and Disabled Persons Act.  On May 13, 2011, Sharp amended the complaint to add Defendant Seneca Partners, Inc., a Delaware Corporation dba in California as Seneca Partners, Inc. of Delaware.

The parties have now filed cross-motions for summary judgment.  Although several arguments are raised in each motion, the essence of the present dispute concerns the validity and potential mootness of Sharp's ADA claims.  Sharp contends that the alleged barriers listed in his motion are violations of ADAAG, CBC, or both; that those violations prevent his full and equal access to the Restaurant; and that he is deterred from returning to the Restaurant until all alleged barriers have been removed.

Defendants counter that under Oliver, only those barriers alleged in Sharp's FAC are relevant, and that the Court should not consider any additional barriers enumerated in Sharp's motion that were introduced at later stages in the litigation.  Defendants also contend that all ADA violations alleged in the FAC are either not violations or are moot.   Finally, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Sharp's state-law claims.  For these reasons, Defendants assert that the Court should grant their cross motion for summary judgment.

---

[1] The Defendants in this case are either owners, operators, lessors and/or lessees of the Restaurant.

11cv675w

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case, or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

On the other hand, if the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein."  Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Thus, the court is not obligated "to scour the record in search of a genuine issue of triable fact."  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co. of Am., 55 F.3d 247, 251 (7th Cir. 1995)).  When conducting this analysis, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  Anderson, 477 U.S. at 255.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits."  Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotes and citations omitted). Thus, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  Id. (quoting Wright, et al., Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)).  If, however, the cross-motions are before the court at the same time, the court is obliged to consider the evidence proffered by both sets of motions before ruling on either one.  Id. at 1134.

III.   DISCUSSION

    A.   **Oliver does not change the pleading standard for ADA plaintiffs alleging barriers.**

Sharp previously sought leave to file a second amended complaint in order to add barriers that were identified in his ENE statements or expert's report, but not in the FAC.  In that motion, Sharp argued leave to amend was necessary because Oliver created a new pleading standard for ADA plaintiffs, requiring them to identify every

barrier in the complaint.  Defendants opposed the motion, arguing that <u>Oliver</u> did not create a new pleading standard because plaintiffs were already required to provide a detailed list of the ADA violations in the complaint.

Before Sharp's motion to amend was fully briefed, the parties filed the pending cross-motions for summary judgment, which reiterated the parties' conflicting views on <u>Oliver</u>.[2]  Because the parties have again raised <u>Oliver</u> in this case, the Court must address the effect of that decision on ADA pleading standards.

Before <u>Oliver</u>, the Ninth Circuit addressed pleading standards in ADA cases in <u>Skaff v. Meridien North America Beverly Hills, LLC</u>, 506 F.3d 832 (9th Cir. 2007).  There, plaintiff was a wheelchair-bound paraplegic who sued the defendant hotel for violations of the ADA after the hotel initially did not provide him with a room equipped with a roll-in shower and wall-hung shower chair.  <u>Id.</u> at 835-36.  In addition "[plaintiff's] complaint alleged more generally that during the course of his stay at the Hotel, Plaintiff encountered numerous other barriers to disabled access, including path of travel, guestroom, bathroom, telephone, elevator, and signage barriers to access, all in violation of federal and state law and regulation."  <u>Id.</u> at 836 (internal quotations omitted).  The complaint also stated that "[u]ntil Defendants make the Hotel and its facilities accessible to and useable by Plaintiff, he is deterred from returning to the Hotel and its facilities."  <u>Id.</u> (internal quotations omitted).

In the context of reversing the district court's denial of plaintiff's motion for attorneys' fees and costs, the Ninth Circuit unequivocally held that, apart from the alleged inaccessible showers, the generally pled accessibility barriers in the complaint were sufficient to give plaintiff standing to pursue his case against the defendant hotel.  <u>Id.</u>, 506 F.3d at 840.  In explaining its holding, the court referenced the "minimal hurdle of notice imposed by Rule 8," and specifically stated that:

---

[2]  The Court ultimately denied Sharp's motion for leave to amend based on his failure to demonstrate good cause.  (*See Order Deny Mt. to Amend* [Doc. 52].)

1
2
3
4

> As a matter of law, the [generally pled] allegations in paragraph 14 that Skaff encountered barriers to access, and the allegation in paragraph 17 that Skaff was deterred by accessibility barriers from visiting [the hotel], gave [the hotel] notice of the injury Skaff suffered and, at the pleading stage, established Skaff's standing to sue for violations of the ADA.

5   Id. at 841.

6   The court elaborated further, explaining that the "purpose of a complaint under
7   Rule 8 [is] to give the defendant fair notice of the factual basis of the claim" and that
8   "[s]pecific facts are *not necessary*." Id. (quoting Erikson v. Pardus, 551 U.S. 89, 93
9   (2007)) (internal quotations omitted) (emphasis added). The court explicitly rejected
10  the defendant hotel's insinuation that a heightened-pleading standard be imposed on
11  ADA plaintiffs, noting that "the Supreme Court has repeatedly instructed us not to
12  impose such heightened standards in the absence of an explicit requirement in a statute
13  or federal rule." Id. (citing Swierkiewicz, 534 U.S. at 515). Additionally, the Ninth
14  Circuit determined that "concerns about specificity in a complaint are normally handled
15  by the array of discovery devices available to a defendant." The court ultimately placed
16  the onus on the hotel because the hotel did not make use of such devices to address
17  details about the plaintiff's generally pled allegations. Id. at 842.

18  In Oliver, 654 F.3d 903, the Ninth Circuit again addressed the issue of pleading
19  ADA barriers in a complaint, this time in the context of evaluating a summary-
20  judgment ruling. In that case, a wheelchair-bound plaintiff sued a grocery store alleging
21  eighteen architectural barriers existing on defendant's premises in violation of the
22  ADA. Id., at 906. Unlike the more general barrier allegations in Skaff, the Oliver
23  plaintiff's allegations identified the following specific barriers:

24  • tow away signage provided at the facility is incorrect;
    • signage in the van accessible stall is incorrect;
25  • no stop sign painted on pavement where accessible route crosses
26    vehicular way;
    • no detectable warnings where accessible route crosses the vehicular way;
27  • pay-point machine mounted too high and out of reach;
28  • no directional signage leading to the accessible restrooms;

- signage at the men's restroom's entrance door is incorrect;
- door into the men's restroom requires too much force to operate and does not completely close;
- stall door is not self closing;
- handle and lock on stall door requires pinching and twisting to operate;
- side grab bar is mounted more than 12 inches from the back wall;
- side grab bar does not extend 24 inches beyond the toilet tissue dispenser;
- toilet tissue dispenser protrudes into the clear floor space needed at the water closet;
- trash receptacle protrudes into clear floor space needed at water closet;
- pipes underneath the lavatory are not wrapped to prevent burns;
- handles to operate the lavatory controls require twisting and grasping;
- soap dispenser's operable part is mounted more than 40 inches from floor;
- operable part of the hand dryer mounted more than 40 inches from floor.

Id. at 905, n. 5.

After the scheduling deadline for motions to amend the complaint had passed, the plaintiff filed motions to amend the scheduling order and complaint. Id., at 906. The motions were denied because plaintiff was unable to show good cause under Rule 16(b). Id. Four months later, plaintiff provided the defendant with his expert report, which added detail regarding some of the barriers already identified in plaintiff's complaint, but also "added several additional barriers that had not been listed in the complaint." Id. The parties then filed cross-motions for summary judgment. The district court granted summary judgment to the grocery store and explained that "it would not consider the barriers listed in Oliver's expert report because they were not properly before the court." Id.

On appeal, the Ninth Circuit affirmed the district court's ruling. In citing Twombly, the court again recognized the applicability of Rule 8's notice pleading standard to claims alleging barriers. Id., at 908. The court explained that "in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint" and that "only disclosures of barriers in a properly pleaded complaint can provide such notice." Id. at 908-09. However, nowhere did the court address the specificity with which barriers must be alleged in the complaint. Rather, the court generally stated that "for purposes of Rule 8, a plaintiff must identify the barriers that

constitute the grounds for a claim of discrimination under the ADA in the complaint itself [and] a defendant is not deemed to have fair notice of barriers elsewhere identified." Id. at 909.

Contrary to the parties' arguments, Skaff and Oliver are compatible because each dealt with very different pleading approaches by the plaintiffs. While the Skaff plaintiff pled the alleged accessibility barriers very generally, the Oliver plaintiff pled a detailed, comprehensive list of barriers. For example, in Skaff, plaintiff pled simply that barriers existed in the bedroom, which the Ninth Circuit found sufficient under Rule 8. Important to this pleading approach is that it notifies defendant that discovery is needed to determine the exact barriers in the bedroom. In this way, ADA cases are no different than other cases where discovery is needed to determine all of plaintiff's theories supporting the causes of action pled in the complaint.

On the other hand, the Oliver plaintiff's approach left little doubt about what was wrong with the facility. For example, plaintiff alleged that the operable part of the hand dryer was improperly mounted more than 40 inches from the floor. This level of specificity necessarily precludes a plaintiff from later alleging another defect with respect to the hand dryer.

Here, Sharp's barrier allegations fall somewhere between Skaff and Oliver. Many of the allegations are somewhat general, requiring Defendants to use discovery to determine all of the alleged violations. However, the violations are not nearly as general as those pled in Skaff, thereby limiting the scope or type of violations Sharp may pursue given that his motion for leave to amend was denied.

**B.     Sharp's Summary-Judgment Motion**

      **1.     Sharp is a qualified person with a disability.**

Sharp seeks summary adjudication of his status as a qualified person with a disability.

1   The Code of Federal Regulations defines a disability as a "physical or mental
2   impairment that substantially limits one or more of the major life activities of [an]
3   individual." 28 C.F.R. § 36.104. Sharp contends that he satisfies this standard because
4   he is unable to independently walk or stand as a result of neurological injuries and
5   requires the use of a wheelchair for mobility. (*Pl.'s P&A* [Doc. 41-1], p.4.)

6   Defendants do not address this issue in their memorandum of points and
7   authorities. (*See Defs.' Opp'n* [Doc. 43].) However, in their opposing separate
8   statement of material facts, Defendants appear to dispute that Sharp cannot
9   independently walk or stand. (*See Defs.' RSS* [Doc. 43-6], No. 1.) Defendants'
10  argument it ridiculous.

11  In support of their dispute that Sharp cannot independently stand or walk as a
12  result of neurological injuries, Defendants cite Sharp's deposition testimony during
13  which he admitted that he could stand with parallel bars, and within the past six
14  months was able to walk approximately 22 feet with the aid of a walker. (*See Defs.' RSS*
15  [Doc. 43-6], No. 1., citing *Chilleen Dec.* [Doc. 43-5], Ex. A at p. 14.) The Court is at
16  a complete loss as to how this testimony supports Defendants' contention that he can
17  stand and/or walk *independently*. The only inference that could reasonably be drawn is
18  that in order to stand or walk, Sharp requires the aid of the parallel bars or a walker.
19  He is, therefore, entitled to summary adjudication on this issue.

20
21  **2.    The Restaurant is a place of public accommodation &**
22  **Defendants are owners, operators, lessors and/or lessees.**

23  Sharp next seeks to establish that (1) the Restaurant is a place of public
24  accommodation, and (2) the following are the owners, operators, lessors and/or lessees
25  of the Restaurant: Defendant Balboa Islands LLC; Islands California Arizona LP; Big
26  Wave Inc. dba Islands Fine Burgers & Drinks; Fredman Family Trust (4-10-85); Amelia
27  B. Silverberg Trust of 1980; Sheldon M & Janet S. Golden Trust; Seneca Partners, Inc.,
28  a Delaware Corporation dba in California as Seneca Partners, Inc. of Delaware

1   (collectively, the "Owner Defendants").  (*Pl.'s P&A* [41-1], pp. 4–5; *Plt.'s SSMF* [41-2],

2   No. 2.)   Defendants' do not dispute that the Restaurant is a place of public

3   accommodation, and in their separate statement concede that the Owner Defendants

4   are the owners, operators, lessor and/or lessees of the Restaurant. (*Defs.' RSS* [Doc. 43-

5   6], No. 2.)  Accordingly, Sharp is entitled to summary adjudication on these issues.

6

7                    **3.    Parking spaces - excessive slope.**

8        Sharp seeks summary adjudication that the parking spaces have an excessive

9   slope in violation of ADAAG and the CBC.  (*Pl.'s MSJ* [Doc. 41-1], 11:24—25.)  In

10  support of this claim, Sharp relies on a report prepared by Peter Margen, Sharp's expert

11  witness. (*See Pl's SSMF* [Doc. 41-2], No. 17.)  Margen states that he prepared the

12  report after inspecting the Restaurant.[3]  (*Margen Dec.* [Doc. 41-5], ¶¶ 7—10.)

13  According to the report, the parking spaces have a 2.5–4.0% running slope.  (*Id.*, Ex.

14  2 at pp. 6–7, item nos. 1.3, 1.6, 1.7.)

15       In opposition, Defendants rely on the declaration of Lewis Jackson.  (*See Defs.'*

16  *RSS* [Doc. 43-6], No. 17.)  Jackson states that the slope of the accessible parking spaces

17  does not exceed 2.0%.[4]  (*Jackson Dec.* [Doc. 43-1], ¶ 3.)  Jackson also attaches

18  photographs of the parking spaces that shows a level measuring the slope at less than

19  2%.  (*Id.*, Ex. A.)  Because a dispute exists regarding whether any portion of the parking

20  spaces currently exceed 2%, Sharp is not entitled to summary adjudication on this issue.

21

22

23  _____

24       [3] Defendants' objection to the report is overruled. (*See Def.'s Obj. to Margen* [Doc.43-7],
     No. 3.)

25

26       [4] Sharp objects to the declaration of Jackson on the ground that he does not qualify as
     an expert.  (*Pl.'s Reply Obj* [Doc. 45-1], 3:1–13.)  Although the Court agrees that on the

27  current record Jackson does not qualify as an expert, Sharp has failed to demonstrate that an
     expert is needed to use or read a level in order to measure the slope of a parking space.  Nor

28  has the Court's independent research found any case law addressing whether using or reading
     a level requires expert testimony.  For this reason, the objection is overruled.

### 4.   <u>No take-out accessible parking.</u>

Sharp seeks summary adjudication that there is no take-out accessible parking in violation of ADAAG and the CBC.  (*Pl.'s MSJ* [Doc. 41-1], 11:26—27.)  In support of this claim, Sharp relies on the report prepared by Margen.  (*See Pl's SSMF* [Doc. 41-2], No. 18.)  The report indicates that there are "three parking spaces for take out customers."  (*Margen Dec.* [Doc. 41-5], Ex. 2 at p. 6, item no. 1.2.)  The pictures attached to the report demonstrate that there are no accessible take out parking spaces. (*Id.*, Ex.2, pic. 45.)

In opposition, Defendants point out that Sharp has failed to cite a case finding that the ADA or CBC requires a place of public accommodation to provide an accessible take-out parking space.  (*Defs.' Opp'n.* [Doc. 43], 7:4–13.)  Defendants also point out that Sharp fails to cite a specific ADAAG or CBC requirement.

Although Sharp's reply fails to address this issue, in his opposition to Defendants' motion, Sharp correctly points out that "DOJ regulations prohibit public accommodations from subjecting persons with disabilities to the denial of an opportunity to participate in or benefit from their goods, services, facilities, privileges, advantages, or accommodations." (*Pl.'s Opp'n.* [Doc. 46], 5:16–6:2) He also points out that "public accommodations are required to provide their goods and services to persons with disabilities in a manner that is equal to that afforded to others."  (*Id.*, 6:2–4, citing 28 C.F.R. § 36.202(b).)

Based on this authority, the Court agrees that a place of public accommodation may be liable for failing to provide accessible take-out parking under certain circumstances.  For example, if the restaurant provides a separate entrance for take-out orders, which is not close to the main entrance and use of the service requires patrons to leave their cars and enter the restaurant, the failure to provide accessible take-out parking may be a violation of the ADA.

1    However, in this case, neither party provides sufficient evidence regarding the

2    relevant circumstances that would enable this Court to decide this issue. For this

3    reason, Sharp is not entitled to summary adjudication on this issue.

4

5              **5.    No accessible route for the public right of way.**

6         Sharp seeks summary adjudication that there is no accessible route for the public

7    right of way. (*Pl.'s MSJ* [Doc. 41-1], 12:1—2.) In support of this claim, Sharp relies on

8    the report prepared by Margen. (*See Pl's SSMF* [Doc. 41-2], No. 19.) The report

9    indicates that there is no accessible route from Balboa Avenue to the building entrance.

10   (*Margen Dec.* [Doc. 41-5], Ex. 2 at p. 8, item no. 2.1.)

11        Defendants oppose on the ground that they do not own the public right of way,

12   and thus are not liable for this alleged barrier. (*Defs.' Opp'n.* [Doc. 43], 7:15–26.)

13   Sharp completely ignores this issue in his Reply (*see Reply* [Doc. 45], 5:1–11), thus

14   conceding that Defendants' do not own the public right of way.

15        This Court cannot order Defendants to alter property that they do not own. See

16   Hubbard v. Rite Aid Corp., 433 F.Supp.2d 1150, 1169 (S.D. Cal 2006) (finding that

17   defendant could not "alter the path of travel on property it does not own or otherwise

18   control). Accordingly, Defendants are entitled to summary adjudication on this issue.

19

20             **6.    Excessive change in parking-curb ramp.**

21        Sharp seeks summary adjudication that there is an excessive change in elevation

22   at the parking-curb ramp. (*Pl.'s MSJ* [Doc. 41-1], 12:11—12.) In support of this claim,

23   Sharp relies on the report prepared by Margen. (*See Pl's SSMF* [Doc. 41-2], No. 24.)

24   The report states that there is a "1-1/4" vertical change in elevation between the curb

25   ramp and parking space." (*Margen Dec.* [Doc. 41-5], Ex. 2 at p. 9, item no. 2.7.)

26        In opposition, Defendants rely on the declaration of Jackson. (*Defs.' RSS* [Doc.

27   43-6], No. 24.) Attached to Jackson's declaration are pictures indicating that the curb

28   ramp does not have a 1-1/4" change in elevation. (*Jackson Dec.* [Doc. 43-1], Ex. C.)

1  Because a dispute exists regarding whether the curb ramp currently has a 1-1/4" vertical
2  change, Sharp is not entitled to summary adjudication on this issue.
3
4          **7.      Exterior door requires excessive force.**
5          Sharp seeks summary adjudication that the exterior door requires excessive force
6  in violation of the CBC. (*Pl.'s MSJ* [Doc. 41-1], 12:15—16.)  In support of this claim,
7  Sharp relies on Margen's report, which states that the opening force is 10 lbs. (*Margen*
8  *Dec.* [Doc. 41-5], Ex. 2 at p. 10, item no. 3.3.)  However, Defendants provide evidence
9  that the door requires less than 5 lbs. of force. (*See Jackson Dec.* [Doc. 43-1], ¶ 7, Ex.
10 D.)  Because a dispute exists regarding the amount of opening force required, Sharp is
11 not entitled to summary adjudication on this issue.
12
13         **8.      Accessible seating.**
14         Sharp seeks summary adjudication of the following issues: no accessible seating
15 in the dining area in violation of ADAAG and CBC; and no accessible bar seating in
16 violation of ADAAG and CBC. (*Pl.'s MSJ* [Doc. 41-1], 12:27—13:2; *Pl.'s SSMF* [Doc.
17 41-2], Nos. 32, 33.)  In support of these issues, Sharp relies on the Margen declaration.
18 (*Id.*)  However, Margen's report indicates that there is accessible seating in the dining
19 area, which contradicts his claim that there is "no" seating.  (*See Margen Dec.* [Doc. 41-
20 5], Ex. 2 at p. 12, item no. 3.9.)   Accordingly, Sharp is not entitled to summary
21 judgment regarding the accessible seating in the dining area.
22         As for the bar area, Margen's report indicates that there is no accessible seating.
23 (*See Margen Dec.* [Doc. 41-5], Ex. 2 at p. 12, item no. 3.9 and p. 15, item no. 3.15.)
24 Defendants, however, provide evidence disputing this fact.  According to Jackson's
25 declaration, there is 1 accessible table in the bar area. (*Jackson Dec.* [Doc. 43-1], ¶ 9.)
26 Because a dispute exists regarding this fact, Sharp is not entitled to summary
27 adjudication on this issue.
28

1        **9.     Bar-area table seating knee clearance.**

2        Sharp seeks summary adjudication of the following issue: bar area – table seating

3    without required knee clearance in violation of ADAAG and CBC. (*Pl.'s MSJ* [Doc. 41-

4    1], 12:5–6.)   In support of this claim, Sharp relies on Margen's report, which states that

5    table "when deployed . . . is 15-1/2" deep."  (*See Margen Dec.* [Doc. 41-5], Ex. 2 at p.

6    15, item no. 3.15.)  However, Defendants provide evidence that the knee depth is 19".

7    (*See Jackson Dec.* [Doc. 43-1], ¶ 9.)     Additionally, Jackson provides photographs

8    confirming his measurement of 19 inches. (*Id.*, Ex. F.) Because a dispute exists regarding

9    the correct measurement, Sharp is not entitled to summary adjudication on this issue.

10

11       **10.    Inaccessible counter in bar area.**

12       Sharp seeks summary adjudication of the following issue: bar area –inaccessible

13   counter in violation of ADAAG and CBC. (*Pl.'s MSJ* [Doc. 41-1], 12:7–8.)  In support

14   of this claim, Sharp relies on Margen's report, which states that the counter is in an

15   inaccessible location.  (*See Margen Dec.* [Doc. 41-5], Ex. 2 at p. 15, item no. 3.15.)

16       In response, Defendants argue that the counter does not have to be accessible

17   because an accessible table is provided in the same area.  (*Defs.' Opp'n.* [Doc. 43],

18   10:10–16.)  In support of this argument, Defendants cite ADAAG § 5.2, and rely on

19   Jackson's declaration that states that 1 of the tables in the bar area is accessible.

20   (*Jackson Dec.* [Doc. 43-1], ¶ 9.)   Additionally, Jackson provides a photograph of the

21   table. (*Id.*, Ex. F.)

22       Sharp's reply does not respond to this argument (*see Pl.'s Reply* [Doc 45]),

23   therefore conceding Defendants' legal argument.  Nor does Sharp dispute that an

24   accessible table is provided in the bar area.  Accordingly, Sharp is not entitled to

25   summary adjudication on this issue.[5]

26   _____

27       [5] Although not addressed in Defendants' opposition or Sharp's reply, the CBC
     requirement cited in Margen's report also indicates that an accessible counter is not necessary
28   because Defendants provide an accessible table in the bar area. (*See Margen Dec.* [Doc. 41-5],
     p. 15, item no. 3.15.)

1              **11.    Accessible route for counter/table seating.**

2          Sharp seeks summary adjudication of the following issue: counter/table seating -

3   accessible route in violation of ADAAG and CBC. (*Pl.'s MSJ* [Doc. 41-1], 12:9–10.)

4   In support of this claim, Sharp relies on Margen's report, which states that the "POT

5   through the bar area between tables is reduced to clearances as narrow as 27"."

6   (*Margen Dec.* [Doc. 41-5], Ex. 2 at p. 14, item no. 3.14.)

7          In response, Defendants simply argue that the claim is too vague.  The Court

8   disagrees given that Margen's report identifies the alleged problem.  (*See Margen Dec.*

9   [Doc. 41-5], Ex. 2 at p. 14, item no. 3.14.)    Additionally, the report attaches

10  photographs of the path of travel.  (*Id.*, pics 15–20.

11         Defendants also contend that the path of travel is accessible.  (*Defs.' Opp'n.*

12  [Doc. 43], 10:25.)  In support of this claim, Defendants rely on Jackson's declaration,

13  which states that "[a]ll accessible tables are accessible by way of an access aisle that is

14  at least 36 inches clear between parallel edges of tables or between a wall and the table

15  edges." (*Jackson Dec.* [Doc. 43-1], ¶ 10.)  Additionally, Jackson provides photographs

16  of the routes/aisle. (*Id.*, Ex. G.)  Because a dispute of fact exists, Sharp is not entitled

17  to summary adjudication on this issue.

18

19             **12.    Men's restroom geometric signage height.**

20         Sharp seeks summary adjudication that the men's restroom geometric signage

21  height violates the CBC. (*Pl.'s MSJ* [Doc. 41-1], 12:11–12.)  In support of this claim,

22  Sharp relies on Margen's report, which states that the "sign is mounted 65" AFF to

23  centerline of sign." (*Margen Dec.* [Doc. 41-5], Ex. 2 at p. 16, item no. 4.2.)

24         Defendants respond that the sign is compliant. (*Defs.' Opp'n.* [Doc. 43],

25  10:27–28.)  In support of this argument, Defendants rely on Jackson's declaration,

26  which includes a picture showing that the sign is mounted approximately 59 inches

27  from the ground surface to the center of the sign.  (*See Jackson Dec.* [Doc. 43-1], Ex. G.)

28

1   Because a dispute of fact exists, Sharp is not entitled to summary adjudication on this

2   issue.

3

4       **13.    Men's restroom door pressure.**

5           Sharp seeks summary adjudication that men's restroom door requires excessive

6   opening force in violation of ADAAG and CBC. (*Pl.'s MSJ* [Doc. 41-1], 13:13—14.)

7   In support of this claim, Sharp relies on Margen's declaration, which states that the

8   door requires 6 lbs. of force to open. (*Margen Dec.* [Doc. 41-5], Ex. 2 at p. 26, item no.

9   4.3.)  However, Defendants provide evidence that the door requires less than 5 lbs. of

10  force. (*See Jackson Dec.* [Doc. 43-1], ¶ 12.) Additionally, Jackson provides photographs

11  confirming his measurement.  (*Id.*, Ex. I.)  Because a dispute exists regarding the correct

12  measurement, Sharp is not entitled to summary adjudication on this issue.

13

14      **14.    Additional briefing on Sharp's remaining architectural barriers.**

15          Sharp's motion also seeks summary adjudication with respect to the following

16  barriers that allegedly violate the ADA and/or the CBC:

17  - driveway along sidewalk - excessive cross-slope;
18  - storm drain adjacent to path of travel - excessive width of opening;
    - north exit walk - excessive change in level;
19  - south walk - no curb ramps;
    - primary entrance signage - ISA signs not provided;
20  - vestibule door – inadequate distance between door in a series;
21  - vestibule door – requires excessive force;
    - take out door – no ISA signage;
22  - take out door strike side clearance pull side;
23  - emergency exit door strike side clearance - pull side;
    - bar area - inappropriate and inaccessible wheelchair lift;
24  - men's restroom door – no smooth bottom surface;
25  - men's restroom door – inadequate landing on push side;
    - men's restroom lavatories – lack of required knee space;
26  - men's restroom lavatory – lack of insulation;
27  - men's restroom path of travel to the accessible toilet compartment – width;
28  - men's restroom accessible toilet compartment – no latch side strike side clearance;

- men's restroom accessible toilet – centerline;
- men's restroom accessible toilet compartment toilet tissue dispenser – location;
- men's restroom accessible toilet compartment toilet seat cover dispenser – height;
- men's restroom accessible toilet compartment baby changing table – handle.

(*Pl.'s MSJ* [Doc. 41-1], pp.11–14.)

In response to these issues, Defendants contend the claims are barred under <u>Oliver</u>. Accordingly, with respect to the above issues, the parties are ordered to provide supplemental briefing regarding whether the above violations are barred or fall within the scope of Sharp's complaint.

### C.   **Defendants' Summary-Judgment Motion**

1.   **Parking spaces.**

Defendants move for summary adjudication with respect to Sharp's contention that the accessible parking spots are not properly signed, configured and/or located in violation of the ADA.

First, Defendants contend the parking spots are properly signed. (*Defs' SSUMF* [Doc. 44-2], No. 1.) In support of the claim, Defendants rely on the declaration of Jackson, wherein he states that the accessible parking spots "are properly signed, configured and located." (*Jackson Dec.* [Doc. 44-3], ¶ 3.) Although this statement is improper legal conclusion, Jackson also attached pictures demonstrating that the parking spaces are properly signed. (*Id.*, Ex. A.)

In opposition, Sharp asserts that the Restaurant lacks "designated" parking spaces, but fails to cite any supporting evidence. This is insufficient on summary judgment, and for this reason alone entitles Defendants to summary judgment on this issue. <u>Celotex</u>, 477 U.S. at 323–324 ("Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, Rule 56(e) requires the nonmoving party to" provide evidence demonstrating a genuine issue for trial.)

Additionally, Sharp also objects to Defendants' evidence regarding the parking-space signs on the ground of inadmissible legal and expert testimony. As stated above, the Court agrees that Jackson's statement constitutes an improper legal conclusion and, therefore, sustains the objection. However, the pictures attached to Jackson's declaration are admissible, and establish that the parking spaces are properly signed. Defendants are entitled to summary adjudication on this issue.

As for Defendants' contention that the parking spaces are properly "configured and located," the Court finds this issue overly vague. Defendants do not cite any standard by which the Court can determine if the parking spaces are properly configured and located, nor do Defendants identify any "facts" that could be applied to the applicable ADAAG requirement. For these reasons alone, Defendants are not entitled to summary adjudication on this issue.

Moreover, as explained in section B.3. above, a dispute exists as to whether the parking spaces have an excessive slope. To the extent "configured" is intended to include the parking spaces' slopes, a dispute also exists regarding this issue.

### 2.   Take-out/to-go parking spaces.

Defendants move for summary adjudication with respect to Sharp's contention that the take-out/to-go parking spaces are inaccessible in violation of the ADA. For the reasons stated above in section B.4, the Court finds that disputed issues of material fact exist regarding this issue and Defendants are not entitled to summary adjudication.

### 3.   Accessible route from the public right of way to the entrance.

Defendants move for summary adjudication with respect to Sharp's claim that Defendants have failed to provide an accessible route from the public right of way to the entrance of the Restaurant. (*Defs' MSJ* [Doc. 44-1], 6:25–8:8.) Defendants argue, among other things, that because they do not own the public right of way, they are not liable for this alleged barrier. (*Id.*) In support of this contention, Defendants rely on

the declaration of Jackson, which states that Defendants do not lease, own, operate or otherwise control the public right of way. (*Jackson Dec.* [Doc. 44-3], ¶ 5.)

In his opposition, Sharp alleges that "parts of the path of travel that provides access to the Restaurant [are] on property owned and/or leased by Defendants." (*Pl.'s Opp'n.* [Doc. 46], 6:16–22.) However, Sharp fails to identify which "parts of the path of travel" Defendants allegedly own, nor does he provide any evidence suggesting Defendants own or control any such portions. Sharp's failure to provide evidence is fatal to his opposition on this issue. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–324 (1986) ("Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, Rule 56(e) requires the nonmoving party to" provide evidence demonstrating a genuine issue for trial.) Additionally, this Court cannot order Defendants to alter property that they do not own. See <u>Hubbard</u>, 433 F.Supp.2d at 1169 (S.D. Cal 2006) (finding that defendant could not "alter the path of travel on property it does not own or otherwise control). For these reasons, Defendants are entitled to summary adjudication on this issue.

### 4. <u>Parking-curb ramp.</u>

Defendants move for summary adjudication on Sharp's claim that the parking curb ramp has an excessive change in elevation. (*Defs' MSJ* [Doc. 44-1], 8:10–11.) For the reasons stated in section B.6 above, the Court finds disputed issues of material fact exist and thus Defendants are not entitled to summary adjudication on this issue.

### 5. <u>Main-entry door pressure.</u>

Defendants move for summary adjudication on Sharp's claim that the main-entry door pressure is excessive. (*Defs' MSJ* [Doc. 44-1], 8:13–15.) For the reasons stated in section B.7 above, the Court finds disputed issues of material fact exist and thus Defendants are not entitled to summary adjudication on this issue.

11cv675w

1

## 6.   Accessible seating in dining area.

Defendants request summary adjudication on the following factual issues: there are 42 tables in the dining area, at least 6 of which are accessible tables. (*Defs.' MSJ* [Doc. 44-1], 8:16–19.) In support of this contention, Defendants cite the declaration of Jackson, which confirms these facts. (*See Jackson Dec.* [Doc. 44-3], ¶ 8.)

In opposition, Sharp does not dispute Defendants' facts, but instead argues that there must be a minimum of 10 wheelchair accessible dining tables. (*Pl's. Opp'n* [Doc. 46], 7:7–8.) But Defendants' motion does not seek summary adjudication regarding the number of accessible tables needed under the ADA, only that there are 6. Indeed, Sharp's expert, Margen, also states that there are 6 accessible tables in the dining area. (*See Margen Dec.* [Doc. 41-5], Ex. 2 at p. 12, item no. 3.9.) Accordingly, the Defendants are entitled to summary adjudication on these facts.[6]

## 7.   Accessible seating in bar area.

Defendants request summary adjudication on the following factual issues: there are 6 tables in the bar area, at least 1 of which is accessible. (*Defs.' MSJ* [Doc. 44-1], 8:20–22.) In support of this contention, Defendants cite the declaration of Jackson, which confirms these facts. (*Jackson Dec.* [Doc. 44-3], ¶ 9.)

In opposition, Sharp does not address this issue. However, Margen's report filed in support of Sharp's summary-judgment motion states that there is no accessible seating in the bar area, and that there are seven 2-seat tables. (*Margen Dec.* [Doc. 41-5], Ex. 2 at p.15, item no. 3.15.) Accordingly, a dispute exists regarding these factual issues and Defendants are not entitled to summary adjudication on these facts.

//

//

---

[6]Because Defendants did not seek summary adjudication on whether the amount of accessible seating complies with the ADA, the Court need not address the issue.

1

2    **8.     Bar counter.**

       Defendants request summary adjudication on Sharp's claim that because the bar

3    counter is not accessible, Defendants are violating the ADA.  (*Defs.' MSJ* [Doc. 44-1],

4    8:24–9:2.)  For the reasons stated in section B.10 above, the Court finds Defendants are

5    entitled to summary adjudication on this issue.[7]

6

7         **9.     Accessible route in Restaurant.**

8         Defendants request summary adjudication on Sharp's claim that the route inside

9    the restaurant is not accessible in violation of the ADA. (*Defs.' MSJ* [Doc. 44-1],

10   9:3–11.)  For the reasons stated in section B.11 above, the Court finds Defendants are

11   not entitled to summary adjudication on this issue.

12

13        **10.    Men's restroom signage.**

14        Defendants request summary adjudication on Sharp's claim that the men's

15   restroom signage violates the ADA. (*Defs.' MSJ* [Doc. 44-1], 9:12–14.)  For the reasons

16   stated in section B.12 above, the Court finds Defendants are not entitled to summary

17   adjudication on this issue.

18

19        **11.    Men's restroom opening door pressure.**

20        Defendants request summary adjudication on Sharp's claim that the pressure

21   required to open the men's restroom door violates the ADA. (*Defs.' MSJ* [Doc. 44-1],

22   9:15–17.)  For the reasons stated in section B.13 above, the Court finds Defendants are

23   not entitled to summary adjudication on this issue.

24

25

26        _____

27        [7] Sharp's opposition argues that the lack of access to the bar counter is a violation of the
     CBC.  (*Pl.'s Opp'n.* [Doc. 46], 7:10–12.)  Because Defendants' motion seeks summary
28   adjudication of the ADA claim, the Court need not address the issue raised in Sharp's
     opposition.

1

2   12.   **Policies.**

2          Defendants seek summary adjudication on Sharp's ADA claim that Defendants

3   have discriminatory policies relating to accessible tables and the path of travel to the

4   restroom.   (*Def.'s MSJ* [Doc. 44-1], 10:3—6.)  In support of this request, Defendants

5   cite the declaration of Lewis Jackson. (*See Def.'s SSMF* [Doc. 44-2], No. 13.) Jackson's

6   declaration states that Defendants have comprehensive disabled access policies, and he

7   provides a copy of the Restaurant's policies. (*Jackson Dec.* [Doc. 42-4], ¶ 14 and Ex. K.)

8          Sharp's opposing points and authorities does not respond to this issue.  Nor does

9   Sharp's Separate Statement of Genuine Issues dispute that the Restaurant has

10  comprehensive patron policies. (*See SSGF* [Doc. 44-2], No. 13.)  Instead, Sharp simply

11  objects to Defendants' evidence as lacking foundation and as inadmissible expert

12  testimony.  (*Id.*)  Sharp fails to cite authority or explain how Jackson's statement

13  constitutes in admissible expert testimony.  Additionally, the Court finds Jackson has

14  laid the proper foundation.  Accordingly, the objections are overruled.

15         Additionally, because Sharp bears the burden of proof at trial regarding this issue,

16  he may not simply rely on his objection to Defendants' evidence.  Instead, he must

17  come forward with evidence demonstrating that the policies do not comply with the

18  ADA.  Celotex, 477 U.S. at 323–324 ("Where the nonmoving party will bear the

19  burden of proof at trial on a dispositive issue, Rule 56(e) requires the nonmoving party

20  to" provide evidence demonstrating  a genuine issue for trial.).  Because he has failed

21  to do so, for this additional reason, Defendants are entitled to summary adjudication

22  on this issue.

23         Moreover, the Court has also reviewed Sharp's summary-judgment motion to

24  determine if in that motion, he points to any deficiencies in Defendants' policies that

25  would support his ADA claim.  However, his motion does not raise any issues regarding

26  Defendants' policies.

27

28

1

          **13.**    <u>**To-go pick up entrance.**</u>

2         Defendants seek summary adjudication on Sharp's claim that the Restaurant's

3 to-go pick up entrance is not accessible in violation of the ADA. (*Defs.' MSJ* [Doc. 44-

4 1], 10:7—10.) Defendants contend that ADAAG requires only 50% of the entrances

5 to be accessible, and the Restaurant has only one main entrance. (*Id.*) In support of this

6 argument, Defendants' cite Jackson's declaration, which states that the "restaurant has

7 one main entrance and one side entrance." (*Jackson Dec.* [Doc. 44-3], ¶ 15.)

8         Sharp does not dispute that only one of the entrances must be accessible.

9 Instead, Sharp argues that the to-go- area is "a separate and distinct part of the

10 Restaurant and serves a unique purpose and function" and, therefore, must be

11 accessible. (*Pl.'s Opp'n.* [Doc. 46], 8:8—15.)

12         Sharp, however, offers no facts, much less facts supported by evidence, that

13 support the contention that the to-go area is a separate and distinct part of the

14 Restaurant and that it serves a unique purpose and function.  Because Sharp bears the

15 burden of proof at trial on this issue, he may not simply rely on conclusory statements,

16 but instead must offer evidence. <u>Celotex</u>, 477 U.S. at 323—324 ("Where the

17 nonmoving party will bear the burden of proof at trial on a dispositive issue, Rule 56(e)

18 requires the nonmoving party to" provide evidence demonstrating a genuine issue for

19 trial.)  Accordingly, Defendants are entitled to summary adjudication on this issue.

20

21

          **14.**    <u>**Hostess counter.**</u>

22         Defendants seek summary adjudication on Sharp's claim that the Restaurant's

23 hostess counter does not have a lowered area in violation of the ADA. (*Defs.' MSJ*

24 [Doc. 44-1], 10:11—13.) Defendants contend that the hostess counter complies with

25 the ADA. (*Id.*) In support of this argument, Defendants' cite Jackson's declaration,

26 which states that the "counter is less than 36 inches high and at least 36 inches in

27 length." (*Jackson Dec.* [Doc. 44-3], ¶ 16.)

28

                 11cv675w

1  Sharp's opposing points and authorities does not address this issue. (*See Pl.'s*
2  *Opp'n.* [Doc. 46].) Nor does Sharp provide any evidence raising a disputed issue of
3  material fact.  Sharp, however, objects to the statement that the hostess counter
4  complies with the ADA on the ground that it is a legal conclusion and expert
5  testimony. Although the Court agrees that the objected to statement is a legal
6  conclusion, Jackson's statements regarding the counter's height and length are not.
7  However, Defendants' motion fails to identify the applicable standard.  Because
8  Defendants have failed to carry their burden, they are not entitled to summary
9  adjudication on this issue.

10
11            **15.   To-go counter.**

12  Defendants seek summary adjudication on Sharp's claim that the Restaurant's
13  to-go counter does not have a lowered area in violation of the ADA. (*Defs.' MSJ* [Doc.
14  44-1], 10:14—17.)  Defendants contend that because no transactions take place at the
15  to-go counter, it does not have to be lowered. (*Id.*)  In support of this argument,
16  Defendants' cite Jackson's declaration, which states that "'to-go' parking spaces are
17  reserved for 'curbside' deliver" so that "customers do <u>not</u> get out of their cars and come
18  inside the restaurant" but instead have their food delivered to them curbside." (*Jackson*
19  *Dec.* [Doc. 44-3], ¶¶ 4, 17.)  Based on this fact, it is reasonable to infer that transactions
20  do not take place at the counter.

21  Sharp's opposing points and authorities does not address this issue. (*See Pl.'s*
22  *Opp'n.* [Doc. 46].) Nor does Sharp provide any evidence raising a disputed issue of
23  material fact. Sharp, however, objects to Jackson's statements on the ground that they
24  are legal conclusions and expert testimony. Sharp fails to explain why he believes
25  Jackson's description of how the to-go service operates is a legal conclusion or expert
26  testimony, nor does the Court find that the statements are legal conclusions or expert
27  statements.  Accordingly, Defendants are entitled to summary adjudication on this
28  issue.

set

## IV.   CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS IN-PART** and **DENIES IN-PART** the parties' summary-judgment motions [Docs. 29, 42], as set forth above. Additionally, in light of the discussion of <u>Oliver</u> in section III.A., the Court further **ORDERS** as follows:

1.   On or before **October 19, 2012**, Defendants shall file a brief, not to exceed 10 pages, that addresses whether the following issues are barred by <u>Oliver</u>: (1) each of the barriers listed in section B.14, above, and (2) the barriers identified by Sharp in opposition to Defendants' summary-judgment motion regarding the "Interior of Men's Restroom" and "Women's Restroom."

2.   On or before **November 2, 2012**, Sharp shall file a brief reply, that does not exceed 10 pages, to Defendants' supplemental brief.  Sharp's reply brief shall also address whether he has standing to pursue alleged barriers in the women's restroom.

**IT IS SO ORDERED.**[8]

DATE: September 27, 2012

Hon. Thomas J. Whelan
United States District Judge

---

[8]Defendants also argues that the Court should refuse to exercise supplemental jurisdiction over Sharp's state-law claims.  This argument was premised on the Court granting Defendants' summary-judgment motion with respect to all of the alleged ADA barrier violations.  Because many of the issues have survived Defendants' motion, the Court need not decide whether it should exercise supplemental jurisdiction.